**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SPIN MASTER LTD.,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE ENTERTAINMENT BUSINESS, LLC,** | : | |
| *Defendant*. | : | **NO. 23-cv-04074** |

**MEMORANDUM**

**KENNEY, J.**                                                            **AUGUST 15, 2024**

Plaintiff Spin Master Ltd. ("Spin Master") brought this action against The Entertainment Business, LLC ("TEB" or "Defendant") alleging that TEB breached a contract by continuing to use Spin Master's registered trademarks after the contract had expired. TEB filed the instant motion for judgment on the pleadings (ECF No. 47), requesting that the case be dismissed since a forum-selection clause in the contract mandates that any case arising out of the contract be heard in Ontario, Canada. The motion is briefed and ripe for review. For the reasons discussed below, the Motion is granted and the case will be dismissed.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Spin Master is a children's entertainment company that has created numerous popular characters and entertainment properties, including PAW Patrol. Defendant TEB provides live-event services featuring assorted popular children's characters. In 2019, Spin Master and TEB entered into a contract in which Spin Master licensed the use of PAW Patrol and other brands to TEB in exchange for 20% of gross revenue from any TEB events. ECF No. 39 ¶ 40; *see also id.* at Ex. H. The contract "commenced on January 1, 2019 and expired on December 31, 2020." *Id.* ¶ 42 (citing *id.* at Ex. H, Schedule D(1)). The contract contained a forum selection clause, stating as follows:

> This Agreement shall be governed by, interpreted and construed in accordance with the laws of the Province of Ontario and the laws of Canada applicable therein. The parties hereto agree that any suit, action or proceeding arising out of or relating to this Agreement shall be instituted and prosecuted in any court of competent jurisdiction in the Province of Ontario, and the parties hereto irrevocably submit to the exclusive jurisdiction of said courts and waive any rights to object or to challenge the appropriateness of said forum. Service of process shall be in accordance with the laws of the Province of Ontario.

*Id.* at Ex. H § 24(e). The contract also contained a Force Majeure provision which provided that:

> The inability of Licensee to commence or complete its obligations hereunder by the dates herein required resulting from delays caused by strikes, picketing, insurrection, terrorism, acts of God, war, emergencies, shortages, or unavailability of materials, limitations imposed by exchange control regulations or foreign investments regulations, or other causes beyond Licensee's reasonable control, shall excuse performance during the continuation thereof and extend the period for the performance of the obligations for the period equal to the period(s) of any such delay(s). The foregoing shall not excuse any payment obligations of Licensee. Notwithstanding the foregoing, in the event performance by Licensee is suspended for 3 consecutive months in accordance with this Section, then Licensor may, by written notice to Licensee, terminate this Agreement.

*Id.* at Ex. H § 24(j). Although Spin Master did not sign the contract, "TEB has admitted that the Agreement was a binding contract," and "[t]he parties have consistently conducted their affairs in accordance with the Agreement's terms until TEB's [alleged] intentional breach." *Id.* ¶ 41. The contract stipulated that upon termination, TEB's rights to use the equipment were revoked, and it was required to account for inventory used under the agreement, including costumes. *Id.* ¶¶ 49-55.

The Complaint alleges that Spin Master learned in May 2021 that TEB was continuing to use Spin Master's intellectual property and costumes for live events services. *Id.* ¶ 61. Spin Master informed TEB that the agreement had expired, and demanded that TEB cease using the Spin Master works. *Id.* ¶¶ 63-65. TEB demurred, contending that the COVID-19 pandemic and associated restrictions triggered the Force Majeure provision of the contract, allowing TEB to continue providing live events services to "recoup" the time lost during the pandemic. *Id.* ¶ 66.

After several years of TEB continuing to use the Spin Master marks, and Spin Master periodically demanding that TEB desist, *id.* ¶¶ 62-74, Spin Master filed this action bringing claims

2

of trademark infringement, unfair competition and false designation of origin, copyright infringement, conversion, breach of contract, unfair competition, and injunctive relief, *id.* at 16-33. Spin Master filed an Answer to the Complaint, which included the affirmative defense of improper venue and lack of jurisdiction due to the forum selection clause's apparent requirement that any lawsuit relating to the contract be filed in Ontario, Canada. ECF No. 28 at 13. The Answer also contained counterclaims for breach of contract and breach of quasi-contract. *Id.* at 15-16.

The case entered discovery, with the fact discovery period concluding on July 31, 2024. *See* ECF No. 34 at 1. Following a Motion to Compel filed by Spin Master and an Order of this Court, TEB provided its initial disclosures on July 29, 2024. ECF Nos. 40, 41, 50. Despite an Order from this Court requiring TEB to respond to Spin Master's First Set of Interrogatories or its First Set of Requests for Production, TEB has apparently failed to do so. *See* ECF Nos. 41, 50.

## II.   STANDARD OF REVIEW AND APPLICABLE LAW

A motion for judgment on the pleadings under Rule 12(c) is "analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citation omitted). In reviewing an order granting a motion for judgment on the pleadings, courts accept all factual allegations in the complaint as true, and we draw all reasonable inferences in the light most favorable to the plaintiff. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991). To decide a motion for judgment on the pleadings, like a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record," as well as an "authentic document that a defendant attaches as an exhibit to [the motion] if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

"Courts should evaluate a forum-selection clause pointing to a nonfederal forum in the

same way that they evaluate a forum-selection clause pointing to a federal forum," using the factors laid out in 28 U.S.C. § 1404(a) and the doctrine of *forum non conveniens*. *Caulfield Assocs., Inc. v. D&F Transfer, LLC*, 2020 WL 5076803, at *2 n.4 (E.D. Pa. Aug. 21, 2020) (citing *Atl. Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 61 (2013)). Courts are instructed to consider "the convenience of parties and witnesses [and] the interest of justice." 28 U.S.C. § 1404(a).[1] However, where the instant forum selection clause denotes a non-federal court as the appropriate jurisdiction, the appropriate remedy is to "dismiss the action so it can be filed in the appropriate forum" rather than transferring the case. *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) (citations omitted).

Notwithstanding the focus on the *forum non conveniens* factors, the Supreme Court has held that a forum selection clause "represents the parties' agreement as to the most proper forum," and therefore a forum-selection clause should control "in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (citation omitted). Where a forum-selection clause exists and the plaintiff is "the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Plaintiffs "are ordinarily allowed to select whatever forum they consider most advantageous," but "when a plaintiff agrees by contract to bring suit only in a specified forum – presumably in exchange for other binding promises by the defendant – the plaintiff has effectively exercised its 'venue privilege' before a dispute arises. Only that initial choice deserves deference." *Id.* (citation omitted).

Indeed, the Supreme Court held in *Atlantic Marine* that a court considering a transfer when

---

[1] The Supreme Court has interpreted these factors to include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*

faced with a forum selection clause "should not consider arguments about the parties' private interests," reasoning that the parties "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses" when they selected the forum in the first instance. *Id.* at 64. Accordingly, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* Instead, "a district court may consider arguments about public-interest factors only. . . [which] will rarely defeat a transfer motion."[2] *Id.*

## III.   DISCUSSION

Defendant contends that the case should be dismissed since the forum selection clause controls. ECF No. 47 at 4-8. Plaintiff raises three principal arguments in opposition to the motion. First, Plaintiff claims that only the breach of contract claim is even arguably subject to the forum selection clause, and the trademark, copyright, and unfair competition claims are not subject to the clause. Second, it asserts that private interests militate toward keeping the case in this Court, since Defendant's business, books, records, and witnesses are located in this district. Relatedly, Plaintiff notes that it has had difficulty securing Defendant's compliance for a deposition, and moving the case to another jurisdiction would exacerbate this difficulty. Third, it argues that this Court has a public interest in hearing the case since it arises under United States federal laws and Pennsylvania state laws, which would be easier and more appropriate for a United States court to address.[3]

---

[2] Plaintiff obliquely contends that since the contract is not signed by Defendant, the Court should consider both public and private interests. ECF No. 52 at 6. This argument is unavailing. Courts may consider private interests only where the party at issue was not party to a contract including a forum-selection clause, but was brought as a defendant regardless. *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404-07 (3d Cir. 2017). Here, although Defendant did not sign the contract, Plaintiff states in its complaint that the contract is controlling, and the parties both clearly proceeded through the course of action described in the Complaint, as well as this litigation, as if the contract containing the forum-selection clause was binding. *See* ECF No. 39 ¶ 41.

[3] Plaintiff also asserts that the instant Motion must be denied since there is a material dispute of fact as to whether Plaintiff provided appropriate notice to terminate the contract. *See* ECF No. 52 at 11-12. However, this issue is immaterial to the question of the scope and applicability of the forum-selection clause. Whether or not notice was issued, the analysis on the forum-selection clause would not change.

### A.  Scope of the Clause

Plaintiff contends that most of the conduct at issue occurred after the instant contract expired on December 31, 2020, and therefore cannot possibly be subject to the forum selection clause. ECF No. 52 at 10-11. The language of the clause and the alleged facts in this case contradict this claim.

Plaintiff brought this case because "TEB was continuing to use Spin Master Marks, Works and Costumes for commercial purposes after the expiration of the Agreement." ECF No. 39 ¶ 62. Once Spin Master discovered TEB's conduct, it informed TEB that TEB "was no longer licensed as an authorized provider of meet and greet events, parade appearances, and other activities that incorporate Spin Master Marks, Works, Costumes and any other Spin Master assets and properties that were made available under licenses granted in the Agreement." *Id.* ¶ 63. Subsequently, Spin Master informed TEB that "TEB's activities after the expiration of the Agreement constitute unlicensed use of Spin Master's intellectual property rights and asked that TEB immediately cease and desist from any further unlicensed and infringing activities." *Id.* ¶ 65. As the parties' dispute dragged on, Spin Master maintained that TEB retained costumes which are Spin Master's property, and "any authority TEB may have had to possess or use such Costumes expired with the Agreement on December 31, 2020," and "TEB and Jacob have refused to return Spin Master's Costumes and other tangible or proprietary materials as required under the Agreement." *Id.* ¶¶ 76-77.

As is evident from Plaintiff's own allegations, the dispute arose because TEB had continued to use Spin Master's licensed products after their agreement to do so had expired, with TEB claiming that it could "unilaterally extend the Agreement indefinitely." *Id.* ¶ 68. Thus, the central dispute in this case is whether TEB properly possessed the rights to use the costumes and other marks after the agreement's apparent expiration date of December 31, 2020.

A forum selection clause is interpreted in accordance with its plain meaning. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 99 (3d Cir. 2018). The relevant language of the clause avers that it applies to "any suit, action or proceeding arising out of or relating to this Agreement." ECF No. 39, Ex. H § 24(e). "Relating to" has been defined by the Third Circuit as "having some logical or causal connection." *In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 68 (3d Cir. 2018) (citation omitted). The phrase "arise out of" applies to "all disputes[,] the resolution of which arguably depend on the construction of [the] agreement." *See Skold v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 609 (E.D. Pa. 2015). Although the alleged conduct took place after the apparent expiration of the agreement, TEB would have been permitted to use the costumes and marks if the contract was in place. Therefore, the question of whether the agreement was in force is the critical question in this case, and under any logical reading, the trademark, copyright, and unfair competition claims arose out of the contract.

### B. Private Interests

As discussed *supra*, the Supreme Court has held that a court deciding whether to transfer a case that includes a contract with a forum-selection clause "should not consider arguments about the parties' private interests." *Atl. Marine*, 571 U.S. at 64. Plaintiff's complaints about Defendant's location, business operations, and witnesses are irrelevant where Plaintiff was well-aware of these facts when it made an agreement with Defendant, and yet nonetheless included a forum-selection clause locating the mandatory forum in Canada. Indeed, factors such as "distance, cost, and inconvenience of litigating in [a particular forum] . . .  are entirely irrelevant to the [transfer] analysis where parties have agreed to a [] forum selection clause." *Sherlock v. Lifestyle Hearing Corp. (USA), Inc.*, 2019 WL 5102231, at *5 (E.D. Pa. Oct. 10, 2019) (citing *Atl. Marine*, 571 U.S. at 64). Accordingly, the Court will not consider the private interests in this case.

### C. Public Interests

Plaintiff asserts that the relevant public interests weigh in favor of this case remaining in this district since 1) the conduct occurred in this district, 2) an adjudication would involve a determination of issues under United States federal copyright and trademark laws, 3) a judgment from this Court would be more easily enforced than a judgment from a Canadian court, 4) this Court would be more competent to address Pennsylvania state law claims than a Canadian court, and 5) that applying the forum-selection to only some of the claims would result in duplicative litigation.[4] "As the party acting in violation of the forum-selection clause, [Plaintiff] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67.

These assertions of public interest are generally unsupported. Where they do exist, they are mild, and mostly attributable to Plaintiff's own conduct. Plaintiff claims, in a few brief phrases, that "[i]t is more likely that a judgment from this Court on issues arising under United States federal intellectual property laws would be enforceable against the Defendant than a judgment from a foreign court" and "there should be a policy interest for a United States District Court to decide matters subject to federal jurisdiction under 28 U.S.C. § 1331." ECF No. 52 at 7-8. These vague assertions contain no analysis of the likelihood of enforcing a Canadian judgment or the policy interest at play in deciding an issue contrary to a bargained-for forum-selection clause, and as such fail to meet Plaintiff's high burden in showing that an overwhelming interest exists in keeping the case in this district. Although it is true that the conduct occurred in this district and this Court is more competent to address Pennsylvania law than a Canadian court, both of these facts were eminently foreseeable when Plaintiff agreed to a contract with a Pennsylvania counterpart locating the mandatory forum in Plaintiff's home forum of Ontario, Canada. *See* ECF

---

[4] This Court has already determined that the forum-selection clause applies to all the relevant claims, so this issue is resolved, and there is no possibility of litigating related claims in multiple fora.

No. 39, Ex. H at 5.  Plaintiff has provided no overwhelming public factor that supports overriding their own choice of venue.

## IV.  CONCLUSION

For the foregoing reasons, the forum-selection clause controls and Defendant's Motion is granted. "Because transfer is not available when a forum selection clause specifies a non-federal forum, dismissal is the sole option." *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 87 (3d Cir. 2006) (cleaned up) (citing *Salovaara*, 246 F.3d at 299). As contemplated by the forum-selection clause, Plaintiff may bring its claims in Ontario, Canada.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**_____**

**CHAD F. KENNEY, JUDGE**